IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DANNY D. TURNER,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

OPINION and ORDER

22-cv-714-jdp

---

Petitioner Danny D. Turner seeks relief under 28 U.S.C. § 2255 after a jury convicted him on six counts of distributing and possessing controlled substances in violation of 21 U.S.C. § 841(a)(1) (counts 1–5, 7), one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (count 6), and one count of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (count 8). Turner challenges my determination that he was an armed career criminal under the Armed Career Criminal Act (ACCA) and raises several claims based on ineffective assistance of trial and appellate counsel. I will stay a decision on Turner's first claim regarding his ACCA status but deny his other claims.

BACKGROUND

As relevant here, a petitioner is an armed career criminal under the ACCA if his prior criminal record includes at least three convictions for "serious drug offenses." *United States v. Turner*, 47 F.4th 509, 514 (7th Cir. 2022). The ACCA's definition of serious drug offense includes an offense under state law that involves manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance (as defined in the Controlled

Substances Act), and that carries a maximum term of imprisonment of ten years or more. *See id.*; 18 U.S.C. § 924(e)(2)(A)(ii). To determine if a prior state conviction is a serious drug offense under the ACCA, courts apply the "categorical approach." *Id.* Under this approach, if the elements of the prior state conviction are broader than the elements of a serious drug offense in the ACCA, such that it is possible to violate the state statute without committing a serious drug offense as defined in the ACCA, then the prior state conviction is not a serious drug offense under the ACCA. *See Turner*, 47 F.4th at 514.

The presentence report (PSR) recommended that Turner be deemed an armed career criminal under the ACCA based in part on two state convictions related to trafficking cocaine. *Id.* (citing Wis. Stat. §§ 961.41(1)(cm)1 & (1m)(cm)1 (1998)). Represented by sentencing counsel Kathleen M. Quinn, Turner objected, contending that his Wisconsin convictions were not predicate serious drug offenses because "the Wisconsin drug statute is categorically broader than the ACCA's definition of a serious drug offense." *Id.* at 514–15. The Wisconsin statute reaches (1) narcotic analogs of cocaine and (2) esters and salts of esters of cocaine. *Id.* at 515. The government admitted that this language appeared broader than the ACCA's definition of serious drug offense, but argued that the mismatches were nominal because "the allegedly overbroad conduct is factually impossible." *Id.* I overruled Turner's objection. Based on unrebutted expert evidence from the government, I determined that: (1) esters of cocaine and narcotic analogs of cocaine do not exist and; (2) even if a narcotic analog of cocaine existed, the ACCA's definition of serious drug offense included it. *United States v. Turner*, 20-cr-38-jdp, Dkt. 214 at 2–3.

Because Turner was an armed career criminal, he faced a 15-year mandatory minimum sentence on his conviction for being a felon in possession of a firearm in count 6. *Turner*,

20-cr-38-jdp, Dkt. 231 at 5. Based on a total offense level of 33 and criminal history category of IV, the guideline imprisonment range was 188 to 235 months on counts 1–7. *Id.* Turner also faced a five-year consecutive mandatory minimum sentence for his conviction for possessing a firearm in furtherance of a drug trafficking crime in count 8. *Id.* The court imposed a 20-year sentence, which consisted of a 15-year mandatory minimum on count 7, a 97-month concurrent sentence on counts 1–5 and 7, and a five-year consecutive sentence on count 8. *Turner*, 47 F.4th at 515 & n.2; *Turner*, 20-cr-38-jdp, Dkt. 231 at 17–18.

Represented by Alexander Kasparie, Turner appealed. Turner contended that I erred in rejecting his challenges to his armed career criminal classification. *See Turner*, 47 F.4th at 516. The court of appeals upheld my determination that ACCA's definition of serious drug offense included narcotic analogs of cocaine, concluding that the Wisconsin drug statute was no broader than the ACCA's definition of serious drug offense. *See id.* at 517–18. Regarding Turner's second challenge, the court acknowledged that the ACCA's "definition of a serious drug offense does not reach dealing in esters and salts of esters of cocaine." *Id.* at 518; *see also* Wis. Stat. § 961.16(2)(b)1 (1998) (providing that "controlled substance" under Turner's statutes of conviction reached cocaine and "any of [its] salts, esters, isomers and salts of esters and isomers that are theoretically possible within the specific chemical designation"). But the court of appeals upheld my determination that "esters and salts of esters of cocaine are factually impossible" and therefore concluded that the Wisconsin drug statute "does not actually make criminal any conduct that [the ACCA] does not." *Turner*, 47 F.4th at 518, 522. That is, the categorical approach does not require courts to ignore whether allegedly mismatched conduct "is actually impossible as a matter of scientific fact." *Id.* at 524. The court of appeals rejected Turner's other arguments and affirmed. *Id.* at 524–26.

Turner has now petitioned to vacate his conviction under § 2255. Dkt. 1. The government responded and Turner replied. Dkt. 4 and Dkt. 5. Turner filed a declaration with his reply to counter the government's contention that he failed to show that trial counsel David Karpe provided ineffective assistance by advising him that he could fight the ACCA enhancement only by going to trial. Dkt. 6; *see also* Dkt. 1 at 8.

ANALYSIS

**A.  Claim 1**

Turner contends that his Wisconsin drug convictions are not qualifying prior drug convictions under the ACCA because those statutes "criminalize trafficking in ioflupane," making them categorically broader than the ACCA's definition of serious drug offense. *See* Dkt. 1 at 4. The ACCA included ioflupane as a controlled substance when Turner was convicted of his predicate drug offenses, but no longer does after "the federal government exempted ioflupane from Schedule II [of the Controlled Substances Act in 2015] because of its potential value in diagnosing Parkinson's disease." *United States v. Jackson*, 55 F.4th 846, 851 (11th Cir. 2022). Turner contends that the ACCA's definition of serious drug offense incorporates the version of the Controlled Substances Act in effect when he committed his § 922(g)(1) offense in 2020. Because Turner committed this offense after 2015, he concludes that I erroneously used his Wisconsin drug convictions to classify him as an armed career criminal.

The government contends that this argument is procedurally defaulted because Turner did not raise it on direct appeal. Dkt. 4 at 8, 10–11. But Turner raised this argument in his petition for rehearing. *United States v. Turner*, No. 21-2309, Dkt. 43, at 3–4, 12–17. The

government has not argued that raising a claim in a petition for rehearing does not count as raising it on direct appeal for procedural default purposes, and I have found no controlling authority establishing this proposition.

The government also notes that Turner did not raise this claim at sentencing. Dkt. 4 at 2; *Turner*, 20-cr-38-jdp, Dkt. 195 at 3 n.3. But that's all the government says about this failure. The government does not attempt to show that claim 1 is procedurally defaulted because Turner did not raise it at sentencing. I deem the point to have been forfeited. Because the government has not shown that claim 1 is procedurally defaulted, I will address it on the merits.

Several federal courts of appeals have recently held that the ACCA's definition of serious drug offense incorporates the version of the Controlled Substances Act in effect at the time of the federal firearms offense. *See United States v. Williams*, 48 F.4th 1125, 1142–43 (10th Cir. 2022); *United States v. Brown*, 47 F.4th 147, 154–55 (3d Cir. 2022); *United States v. Perez*, 46 F.4th 691, 699–700 (8th Cir. 2022); *United States v. Hope*, 28 F.4th 487, 504–05 (4th Cir. 2022). But the Eleventh Circuit has taken the opposite view, holding that the ACCA's definition of serious drug offense "incorporate[s] the Controlled Substances Act (and the federal drug schedules it mandates) in existence at the time of the prior federal drug conviction." *Jackson*, 55 F.4th at 858. The Supreme Court has granted certiorari to resolve this circuit split. *See Jackson v. United States*, 143 S. Ct. 2457 (2023). The most prudent course of action is to stay this claim pending the Supreme Court's decision in *Jackson*, which promises to resolve claim 1.

B. **Claim 2**

Turner contends that his Wisconsin drug convictions are not qualifying prior drug convictions under the ACCA because the Wisconsin statutes allegedly include "positional isomers of cocaine," whereas the ACCA's definition of serious drug offense does not. Dkt. 1 at 5; *see also United States v. Ruth*, 966 F.3d 642, 647 (7th Cir. 2020) ("Under federal law, cocaine is defined to include only its optical and geometric isomers.").

Turner's Wisconsin drug convictions were under a statute that included cocaine and "any of [its] salts, esters, isomers and salts of esters and isomers that are theoretically possible within the specific chemical designation." Wis. Stat. § 961.16(2)(b)1 (1998). Under the Wisconsin Uniform Controlled Substances Act, "isomer" "means an optical isomer" and, under § 961.12(2)(b)1, "includes any geometric isomer." Wis. Stat. § 961.01(12g) (1998). So Turner's contention that the prior Wisconsin drug convictions included *positional* isomers is incorrect.

Turner notes that, in affirming his convictions, the court of appeals stated that "the statute defining [his] cocaine offense 'extende[d] the definition of cocaine to include variants that are theoretically possible within cocaine's specific chemical designation.'" Dkt. 5 at 2 (quoting *Turner*, 47 F.4th at 524). Turner further contends that positional isomers are theoretically possible within cocaine's specific chemical designation. *Id.* I do not read *Turner* this broadly. As relevant here, the court of appeals held that esters and salts of esters of cocaine were factually impossible. The court of appeals did not discuss the meaning of "isomer" under § 961.16(2)(b)1 or consider § 961.01(12g) which, by its textual terms, limits the definition of isomer under § 961.16(2)(b)1 to optical and geometric isomers. *Cf. United States v. James*, No. 04-cr-285-18, 2022 WL 11829975, at *4 (E.D. Wis. Oct. 20, 2022) ("In 1995, as part of its

amendments to the controlled substances act, the Wisconsin legislature revised the statute to define isomer more narrowly as referring to only certain isomers.").

Turner calls § 961.01(12g) a "floor," not a "ceiling," and contends that the government "redefine[s] the term 'includes' to mean 'is limited to.'" Dkt. 5 at 2. But § 961.01(12g) states that isomer "*means* an optical isomer" and, under § 961.12(2)(b)1, "*includes* any geometric isomer." (emphases added). Turner ignores the restrictive relationship between these two clauses. Furthermore, § 961.01(12g) defines isomer to include "any positional isomer" under certain sections only, none of which is § 961.12(2)(b)1. This language further shows that Turner's statute of conviction did not include positional isomers.

Turner has not shown that his Wisconsin drug convictions extended to positional isomers. *See United States v. Trumblay*, 234 F.2d 273, 275 (7th Cir. 1956) ("On a motion to vacate, set aside or correct a sentence, a [petitioner] has the burden of proof."). An evidentiary hearing is not warranted on this claim because it presents a straightforward issue of statutory interpretation that does not require further factual development. *See* 28 U.S.C. § 2255(b) (an evidentiary hearing is not warranted if "the files and records of the case conclusively show that the prisoner is entitled to no relief").

**C. Claim 3**

Turner contends that his prior Wisconsin conviction for possession with intent to deliver five grams or less of cocaine or cocaine base is not a serious drug offense under the ACCA. Dkt. 1 at 7. This is because, Turner reasons, the PSR stated that this conviction was a class D felony which, at the time, was "punishable by up to five years in prison." *Id.*; *see also Turner*, 20-cr-38, Dkt. 192 at 19; Wis. Stat. § 973.01(2)(b)4 (1998).

Turner was convicted under Wis. Stat. § 961.41(1m)(cm)1 (1998), which established a 10-year maximum sentence independent of Wisconsin's felony classification system. *See State v. Tucker*, 2005 WI 46, ¶ 3 & n.3. Turner contends that the government forfeited the right to submit the criminal judgment in this case to show that this offense was an unclassified felony because it did not submit it in the underlying criminal case. I need not consider this new evidence to determine that § 961.41(1m)(cm)1 carried a 10-year maximum sentence because I could make this determination by reference to the statute and caselaw. Contrary to Turner's suggestion, making this determination does not violate the Sixth Amendment because it concerns only the fact of a prior conviction. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

### D. Claims 4 and 5

#### 1. Legal standards

Claims of ineffective assistance of counsel are governed by the two-part test in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish that counsel provided ineffective assistance, Turner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Id.* To prove deficient performance, Turner must show that counsel's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at 688. To prove prejudice, Turner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Conclusory claims of ineffective assistance do not satisfy *Strickland*. *See id.* at 690 ("[A] claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable

8

professional judgment."); *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002) ("[C]onclusory allegations do not satisfy *Strickland*'s prejudice component.").

Petitions under § 2255 "must meet heightened pleading requirements." *Shanks v. United States*, No. 21-C-1166, 2022 WL 16552876, at *2 (E.D. Wis. Oct. 31, 2022) (citing *McFarland v. Scott*, 512 U.S. 849, 856 (1994)); *see also Burkhart v. United States*, 27 F.4th 1289, 1299 (7th Cir. 2022) (district court may deny evidentiary hearing if petitioner "makes conclusory or speculative allegations rather than specific factual allegations"); *Trumblay*, 234 F.2d at 275 (In a petition to vacate, the petitioner "must set forth facts and not merely conclusions.").

2. **Claim 4**

Turner contends that Karpe erroneously told him that "the only way to fight the ACCA sentencing enhancement was to go to trial." Dkt. 1 at 8. Turner adds that, had Karpe advised him that he could fight the ACCA enhancement at sentencing, he "would have pled guilty at the outset of those proceedings before the indictment was superseded to add a [§] 924(c) charge." *Id.* Turner provides no further facts to support this claim in his petition.

The government contends that "Turner gives no specific time frame on when this alleged advice was given nor does he provide any additional details to support an assertion of deficient performance." Dkt. 4 at 24. The government adds that Turner cannot show prejudice because, "[t]hroughout his case, [he] was unwavering in his desire to proceeding to trial." *Id.* at 25.

In his reply, Turner contends that the government's discussion of prejudice "show[s] nothing more than that [he] sought a prompt trial once [he] made that decision." Dkt. 5 at 6. Turner adds that "all of the government's record citations postdate [his] decision." *Id.* To support this assertion, Turner submitted a declaration with his reply. Dkt. 6. Turner declares

9

that, in mid-May 2000, he told Karpe that he didn't think he was an armed career criminal, and that Karpe told him a week later that "the only way to fight the ACCA enhancement was to go to trial." Dkt. 6 ¶¶ 1–2. Turner further declares that he "took that as [his] 'only' option to challenge the ACCA enhancement" and told Karpe that, if they were going trial, he wanted a speedy trial so that the government couldn't "get any additional evidence as DNA on the firearm since they have not done it." *Id.* ¶ 2. Turner adds that he would have pleaded guilty had he known that he "could challenge the ACCA enhancement without going to trial." *See id.* ¶ 3. Turner reasons:

> I recognized that I would have a tough time at trial, and I would have just rather accepted a sentence with acceptance of responsibility and no ACCA enhancement. From [what] I recall my guidelines [sentence] would have been quite low. I felt backed into a corner when I understood my only option to fight [an] ACCA [enhancement] [w]as going to trial.

*Id.*

"[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 566 U.S. 134, 140 (2012). To prove prejudice in the plea-bargaining context, Turner must show a reasonable probability that he would have accepted the government's plea offer but for Karpe's alleged misadvice and that the court would have accepted the agreement and imposed a less severe sentence. *See Day v. United States*, 962 F.3d 987, 992 (7th Cir. 2020). Bare assertions that the petitioner would have pleaded guilty but for counsel's misadvice fail to show prejudice by themselves; the petitioner "must go further and present objective evidence that a reasonable probability exists that he would have taken that step." *Cf. United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005). A petitioner's "repeated claims of innocence" may undermine a claim that he would have pleaded guilty had counsel properly informed him. *See Osley v. United States*,

10

751 F.3d 1214, 1224 (11th Cir. 2014); *Welch v. United States*, 370 F. App'x 739, 743 (7th Cir. 2010) ("Welch continues to insist that he is innocent, which makes it difficult to believe his assertion that he would have accepted a plea deal if Chiphe had negotiated one." (collecting cases)).

Claim 4 lacks adequate factual support. In his petition, Turner alleges that Karpe incorrectly advised him that he could fight the ACCA enhancement only by going to trial, and that he would have pleaded guilty absent this misadvice. These allegations are too conclusory to satisfy *Strickland* and § 2255's heightened pleading standards. Turner "believes that his [petition] contains adequate specificity," but fails to explain how it does. *See* Dkt. 5 at 6.

The declaration attempts to provide "the 'who, what, where, when, why and how' that the government claims in missing [from the petition]." *See id.* But I will not consider the declaration because it amounts to "an argument raised for the first time in a reply brief." *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). Using a declaration as a vehicle to raise a new argument does not make this approach proper. Turner could have alleged the new facts in his petition. *See (Robert T.) Turner v. United States*, No. 17-cr-40035, 2022 WL 2046151, at *8 (S.D. Ill. June 7, 2022) ("The nature of Turner's new arguments reveals that they were available to Turner when he filed his original § 2255 [petition], and he has not offered any legitimate reason for failing to raise them then."). Turner was required to do this because § 2255 has heightened pleading standards. Turner's form petition instructed him to "state the *specific* facts that support[ed his] claim." Dkt. 1 at 8 (emphasis added). Because Turner alleged new reasons for granting his petition in his reply and supplement, the government did "not have an opportunity to respond to the new arguments." *See Turner*, 2022 WL 2046151, at *7. Turner's pro se status does not excuse his failure to allege these new facts in his petition. *See*

11

*id.*; *United States v. Davis*, No. 1:16-cr-55, 2023 WL 3568109, at *5 (N.D. Ind. May 18, 2023); *Tyson v. United States*, No. 17-cv-1274, 2018 WL 626290, at *6 (E.D. Wis. Jan. 30, 2018).

Even if I consider Turner's new arguments, claim 4 fails because Turner has not shown prejudice. Turner professed his innocence, at least of the drug counts, less than month after he was indicted, and before Karpe was appointed. *See Turner*, 20-cr-38-jdp, Dkt. 11 at 1 (stating that detectives questioned him about "drug sales [he] had no knowledge of"). Similarly, Turner testified at trial and steadfastly professed his *factual* innocence on all counts, not just the § 922(g)(1) count. *See Turner*, 20-cr-38-jdp, Dkt. 125 at 30–31, 56–57, 60–61. Turner also repeatedly and adamantly expressed his wish to go to trial promptly, which he achieved. *See Turner*, 20-cr-38-jdp, Dkt. 6; Dkt. 30; Dkt. 42; Dkt. 58; Dkt. 119; 128 at 3; Dkt. 129 at 3. Turner contends that he did not start to express his desire for a prompt trial until he decided to go to trial in late May 2020, after Karpe told him that he had to do that to fight the ACCA enhancement. But this was the first court hearing or status conference at which Turner appeared after his arraignment. *See Turner*, 20-cr-38-jdp, Dkt. 6; Dkt. 20; Dkt. 30. Practically, it was Turner's first chance to express this desire. In view of this procedural history and Turner's consistent and categorical claims of innocence, Turner's allegations do not suggest that Karpe's misadvice caused him to insist on a speedy trial. Rather, it's clear from the record that Turner wanted to prove his innocence at trial and had no interest in pleading guilty.

### 3. Claim 5

Turner contends that Karpe was ineffective for failing to move to dismiss the charges for distributing and possessing "cocaine base (crack cocaine)." *See* Dkt. 1 at 8; *Turner*, 20-cr-38-jdp, Dkt. 35 at 1–3 (superseding indictment). Turner contends that the testimony of the government's expert established only that Turner's drugs "tested positive for cocaine base

12

versus crack." Dkt. 1 at 8. Turner also faults Karpe for failing to ensure that the jury instructions "accurately drew this distinction" between cocaine base and crack cocaine and to object to the government's statements during closing that its expert found crack. *Id.* Tuner adds that, had counsel raised done these things, he would have been acquitted on the crack charges and the corresponding § 924(c) charge. *Id.*

In the counts at issue, Turner was indicted for violating 21 U.S.C. § 841(a)(1) for distributing and possessing "a mixture or substance containing a detectable amount of cocaine base (crack cocaine)." *Turner*, 20-cr-38-jdp, Dkt. 35 at 1–3. Section 841(a) makes it unlawful for any person to knowingly or intentionally "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a *controlled substance*." (emphasis added). "The particular type and amount of cocaine that a defendant possesses are not elements of the section 841 offense." *United States v. Kelly*, 519 F.3d 355, 363 (7th Cir. 2008). So, as long as Turner "possessed, with the appropriate mental state, a detectable amount of a substance or mixture containing cocaine base . . . then he [was] guilty of violating section 841." *See id.* Turner does not allege that the government failed to prove the appropriate mental state, or "dispute that he possessed some form of cocaine base." *See id.* So Karpe reasonably could have concluded that I would have denied a motion for judgment of acquittal or any other objection on this basis. Turner has not shown deficiency or prejudice on this claim.

Turner's related arguments fare no better. I instructed the injury that the government had to prove that Turner knowingly distributed the controlled substance charged in the relevant drug counts, which the instructions referred to as "cocaine base (crack cocaine)" and "cocaine base." *See Turner*, 20-cr-38-jdp, Dkt. 116 at 3–6, 9. Again, the government needed only to prove that Turner knowingly distributed and possessed cocaine base, and Turner admits

13

that government's evidence was sufficient for the jury to conclude this. So it was reasonable for Karpe to conclude that the instructions "fairly and adequately inform[ed] the jury of the proper law to be applied to the facts of the case." *See United States v. Key*, 859 F.2d 1257, 1263 (7th Cir. 1988).

Turner faults Karpe for not objecting to the prosecutor's statement during closing that "the expert had found crack." Dkt. 1 at 8; *see Turner*, 20-cr-38-jdp, Dkt. 125 at 122–25. But the court instructed the jury that it had to take the law that the court gave it and that the attorneys' closing arguments were not evidence. *Turner*, 20-cr-38-jdp, Dkt. 115 at 1, 3. Moreover, Karpe objected to the prosecutor's statement that "[w]hether it's crack or powder doesn't make a difference," and I sustained the objection, telling the jury that it must find that "it's cocaine base for the counts involving cocaine." *Turner*, 20-cr-38-jdp, Dkt. 125 at 124. Even assuming Karpe's objection was deficient, Turner has not shown prejudice. The jury was properly instructed on the law and knew not to consider the prosecutor's statements as law or evidence. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). Turner has not shown a reasonable probability that further objection would have led to an acquittal or hung jury.

Appellate counsel Kasparie was not ineffective for failing to raise the issues underlying claims 4 and 5 on appeal because he reasonably could have concluded that they would have been unsuccessful, especially because Karpe failed to preserve most of them. *See Davila v. Davis*, 582 U.S. 521, 533 (2017) ("In most cases, an unpreserved trial error will not be a plainly stronger ground for appeal than preserved errors."); *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims.").

I decline to hold an evidentiary hearing because "the [petition] and the files and records of the case conclusively show that [Turner] is entitled to no relief" on claims 2–5. *Burkhart*, 27 F.4th at 1299 (citing § 2255(b)); *see also Key v. United States*, 806 F.2d 133, 137 (7th Cir. 1986). A hearing on claim 1 is not warranted because it involves a legal issue, and I am deferring consideration of the issue until the Supreme Court decides it.

ORDER

IT IS ORDERED that:

1. Petitioner Danny D. Turner's petition to vacate, Dkt. 1, is DENIED in part, with the result that claims 2–5 are DENIED.

2. Further consideration of Claim 1 is STAYED and this case is ADMINISTRATIVELY CLOSED pending the Supreme Court's decision in *Jackson*.

3. Promptly after the Supreme Court has decided *Jackson*, the government shall file a notice that includes a copy of the *Jackson* decision. At that time, I will lift the stay, reopen the case, and set a new briefing schedule as necessary.

4. The clerk of court is directed to send petitioner a copy of this order.

Entered September 1, 2023.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge